IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN L. SHARKEY, on behalf of himself and the classes defined herein, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 12 C 4354 |
| NAC MARKETING COMPANY, LLC, doing business as NEW VITALITY, | ) ) Judge Virginia M. Kendall ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff John L. Sharkey ("Sharkey") filed suit against NAC Marketing Company, LLC, doing business as New Vitality ("NAC"). Sharkey, who ordered a free trial of dietary supplements from New Vitality, claims NAC violated the Electronic Funds Transfer Act (Count I) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Count II) when it automatically debited his bank account and processed a renewal shipment of dietary supplements. Sharkey additionally brings this action on behalf of a class.

NAC moves to dismiss both counts of Sharkey's Complaint and strike their respective class allegations. For the reasons stated below, NAC's Motion to Dismiss Count I is granted, with prejudice with respect to any Electronic Funds Transfer Act claim under § 1693e. NAC's Motion to Dismiss Count II is granted without prejudice and with leave to amend. The Motion to Strike the Class Allegations is denied as moot with leave to refile following the filing of any amended complaint.

**STATEMENT OF FACTS**

The following facts are taken from Sharkey's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Tamayo v. Blagoyevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). All reasonable inferences are drawn in favor of Sharkey, the non-moving party. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)).

Through television and radio advertising, NAC offers consumers a free trial offer for its "Ageless Male" dietary supplement pills. (Comp. ¶¶ 6-7.) For the free trial offer, the customer pays a shipping and handling fee, receives a 10-, 15-, or 30-day supply of the product, and is automatically enrolled in NAC's "Preferred Free Shipping" program. (*Id.* ¶¶ 7-8.) Under the "Preferred Free Shipping" program, NAC automatically ships additional product from time to time without affirmative action by the customer. (*Id.* ¶ 8.)

Sharkey contacted NAC on or about February 24, 2012, and ordered a free trial of the product. (*Id.* ¶ 11.) NAC debited Sharkey's bank account for $6.99, the cost of shipping and handling. (*Id.* ¶ 12.) Sharkey received the product and a printed receipt marked "This is Not a Bill," summarizing his order, and containing a "Special Message" identifying Sharkey as a "Preferred Shipping Customer." (*Id.* at Exhibit A.) The message stated that the program offered "the convenience of savings plus automated shipping." The message further provided, "If you need to adjust your shipping interval, hold an order or cancel your participation in this program please call customer service at 1-800-943-6465." (*Id.* at Exhibit A.)

On April 23, 2012, approximately two months after Sharkey ordered a free trial of the product, NAC processed a second debit of Sharkey's bank account, this time for $41.94, and sent

a second shipment of pills. (*Id.* ¶ 14.) Sharkey returned the second shipment of the pills upon receipt. (*Id.* ¶ 16.)

Sharkey did not affirmatively order the second shipment of pills, nor did he provide written authorization for the second debit to his account. (*Id.* ¶¶ 15, 17.) NAC did not send Sharkey advance written notice of the debit, and Sharkey did not anticipate additional shipments without further action on his part. (*Id.* ¶¶ 13, 26.) As a result of the second debit, Sharkey's bank account was overdrawn, causing him to incur overdraft fees (which were later reversed by his bank). (*Id.* ¶ 20.) Sharkey alleges that automatic renewal under the "Preferred Shipping Program" was not clearly and conspicuously disclosed when he contacted NAC in response to its advertising. (*Id.* ¶ 9.)

## **STANDARD OF REVIEW**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *Killingsworth*, 507 F.3d at 618 (citing *Savory*, 469 F.3d at 670); *accord Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a compliant must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To determine whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. When there are well-pleaded factual allegations, the Court assumes their veracity and determines if they plausibly give rise to

an entitlement to relief. *Id.* at 679. A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 678.

## DISCUSSION

### I.  Count I: Electronic Funds Transfer Act

In Count II of his Complaint, Sharkey alleges NAC violated § 1693e of the EFTA by debiting his account without written authorization and advanced written notice of the amount to be debited. (Compl. ¶ 25–26.)

The Electronic Funds Transfer Act ("EFTA") provides "a basic framework establishing rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). Civil liability for a violation of the EFTA arises when any person fails to comply with the EFTA with respect to any consumer. 15 U.S.C. § 1693m. Congress delegated regulation of the EFTA to the Federal Reserve Board in order to "effectuate the purposes of the [EFTA], to prevent circumvention or evasion thereof, or to facilitate compliance therewith." 15 U.S.C. § 1693b(c). The regulation implementing § 1693e of the EFTA, under which Sharkey brings his cause of action, deals primarily with transfers between consumers and their financial institutions, but include provisions applicable to transfers from a consumer's account by a third party. *See* 12 C.F.R. Pt. 205, Supp. I, § 205.3(a)(1)(ii). The "preauthorized transfers" provision set forth in § 1693e requires a designated payee to obtain consumer authorization in writing before transferring funds from the consumer's account, and seek additional authorization any time the amount varies. 15 U.S.C. § 1693e.

The facts, assumed to be true as required at this stage of the proceeding, do not give rise to a plausible entitlement to relief under § 1693e of the EFTA. That provision is limited to the rights and obligations of parties utilizing "preauthorized electronic fund transfers." *Id.* To qualify as a preauthorized transfer under § 1693e, the electronic fund transfer must be "authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10). The EFTA's implementing regulation, known as "Regulation E," defines "advanced authorization" of a "preauthorized electronic fund transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer." 12 C.F.R. Pt. 205, Supp. I, § 205.2(k).

The transfer at issue here was not authorized in advance, nor was it set to recur at substantially regular intervals. Sharkey's Complaint specifically alleges that NAC's processing of an additional electronic debit transaction in the amount of $41.94 was unauthorized, not preauthorized. (Compl. ¶ 17.) Furthermore, Sharkey fails to allege NAC made recurring transfers at substantially regular intervals. *See In re DirecTV Early Cancellation Litigation*, 738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010) (finding that a transfer must be "recurring" for § 1693e to apply); *Okocha v. HSBC Bank USA, N.A.*, 08 Civ. 8650, 2010 WL 5122614 (S.D.N.Y. Dec. 14, 2010) (dismissing EFTA § 1693e claim because the preauthorized transfer was not set to occur at recurring intervals and the transfer between the account holder's bank accounts was not an electronic transfer covered by the EFTA). The telephone authorization for a one-time electronic debit transaction in the amount of $6.99 was, based on Sharkey's own allegations, not a "preauthorization" for recurring transfers. Sharkey also specifically states he did not authorize

any future recurring transfers from his account. (Compl. ¶ 17.) Section 1693e was not intended to address such situations. Rather, the provisions related to "preauthorized electronic fund transfers" were aimed to protect "consumers who arrange for regular payments (such as insurance premiums or utility bills) to be deducted automatically from their bank accounts." *Okacha*, 2010 WL 5122614, at *2 (citing S. Rep. 95–915 (1978)). Although at least one other section of the EFTA protects consumers from unauthorized electronic fund transfers initiated without the authority of the consumer, *See* 15 U.S.C. § 1693a(12), such transactions are not governed by § 1693e of the EFTA. Therefore, the Court finds that Sharkey's allegations place the transaction at issue outside of the purview of § 1693e of the EFTA.

There is a paucity of case law on third party merchants' violations of § 1693e of the EFTA, and no case to this Court's knowledge has squarely addressed the issue presented here: whether a claim under § 1693e of the EFTA is proper where there is no preauthorization agreement between a consumer and third party. However, three district court cases cited by NAC, though not directly analogous, illustrate the limited scope of § 1693e. In both *In re Direct TV Early Cancellation Litigation* and *Okacha v. HSBC Bank USA, N.A.*, district courts were confronted with a one-time charge by a defendant against the plaintiff's account. The courts dismissed EFTA claims brought under § 1693e, finding that transfers not set to recur at regular intervals did not constitute "preauthorized" transfers under § 1693e. *In re DirecTV*, 738 F. Supp. 2d at 1091 (transfer must be "recurring" for § 1693e to apply); *Okocha*, 2010 WL 5122614, at *2 (dismissing EFTA § 1693e claim because the preauthorized transfer was not set to occur at recurring intervals and the transfer between the account holder's bank accounts was not an electronic transfer covered by the EFTA).

The court in *Puglisi v. Debit Recovery Solutions, LLC* also adhered to a narrow construction of § 1693e. 822 F. Supp. 2d 218 (E.D.N.Y. 2011). In that case, the plaintiff authorized the defendant debt collector to make two future automatic withdrawals from his account, occurring exactly 30 days apart. *Id.* at 221. The defendant debited the plaintiff's account for the first payment one week earlier than agreed, causing an overdraft on the account. *Id.* The plaintiff filed suit, alleging, among other claims, a violation of the EFTA regulations governing preauthorized electronic fund transfers. *Id.* The district court found that the plaintiff's authorization of two payments did not constitute a "preauthorized electronic funds transfer" because his authorization was not "designed to allow for deductions at substantially regular intervals." *Id.* at 232.

In this case, the scope of the plaintiff's authorization is even more limited. Sharkey granted NAC Marketing authorization to charge his account for a single $6.99 payment. Based on Sharkey's own allegations, this was not a preauthorization for future debits, nor did Sharkey preauthorize regular transfers from his account at a later date. Without a preauthorization, NAC's second deduction for a shipment of the Ageless Male product does not give rise to a claim under § 1693e.

Sharkey's reliance on *O'Brien v. Landers* is misplaced. In *O'Brien*, the plaintiff provided his fitness center with authorization to automatically charge his account for monthly dues on the first business day of each month. No. 1:10-cv-02765, 2011 WL 221865, at *1 (N.D. Ill. Jan. 24, 2011). The authorization also allowed the fitness center to charge the account for any services used by the plaintiff during the previous month. *Id.* The defendant used that authorization to charge an additional $35, which was neither for membership dues nor for any

services. *Id.* The Court held that because the additional charge "was not covered by the plain terms of the original contract" or disclosed in advance by the defendant, the plaintiff had a valid claim under § 1693e. *Id.* at *2.

Although the charge in *O'Brien*, like the one at issue here, was not authorized, there was no dispute in *O'Brien* that the plaintiff entered into an agreement with the defendant preauthorizing regular debits to his account at substantially regular intervals. The plaintiff in *O'Brien* "signed an electronic fund transfer ("EFT") authorization .... stat[ing], "I authorize my bank to make my payments by the method indicated below and post it to my account." *Id.* at *1. The defendant in that case was accused of abusing an existing preauthorization by debiting charges that fell outside the scope of its agreement with the consumer. *Id.* at *2 (determining § 1693e applied because additional charge "was not covered by the plain terms of the contract" and could not "fairly be classified as a charge for services of the previous month"). Because *O'Brien* concerned a third party's fidelity to an existing preauthorization agreement, a claim under § 1693e was appropriate. Unlike *O'Brien*, the circumstances here do not involve a preauthorization agreement. Sharkey does not allege he gave NAC preauthorization to initiate any debits to his account, recurring or otherwise. Accordingly, § 1693e of the EFTA, which solely governs preauthorized electronic fund transfers, does not apply.

NAC's Motion to Dismiss Count I of Sharkey's Complaint is granted with prejudice with respect to any claims brought under § 1693e because the facts alleged in Sharkey's Complaint do not allow this Court to draw the reasonable inference that Sharkey could prove the required

elements of a cause of action under that section.

## II. Count II: Illinois Consumer Fraud and Deceptive Business Practices Act

The Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. The ICFA prohibits:

> Unfair methods of competition and unfair or deceptive acts or practices, including by not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" approved August 5, 1964, in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby.

815 Ill. Comp. Stat. 505/2, § 2. The Illinois Appellate Court has interpreted the statute to be disjunctive, allowing separate claims for unfair acts or practices and deceptive acts or practices. *Pappas v. Pella Corp.*, 844 N.E. 2d 995, 1002 (Ill. App. Ct. 2006).

### A. Unfair Acts and Practices

Sharkey's Complaint properly states a cause of action for unfair practices. In determining whether conduct is "unfair" under the ICFA, Illinois courts look to the following factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (*quoting Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (2002));

*see also FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972). A complaint need not allege all three criteria to properly state a claim for unfairness; a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 N.E. 2d at 960. ICFA claims based on unfair practices are subject to Rule 8's minimum pleading requirements. *See Windy City Metal*, 536 F.3d at 670 ("Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)). However, even under Rule 8's minimum pleading requirement, a plaintiff alleging unfair practices under the ICFA must "describe how the [unfair practice] is oppressive or violates public policy. Without such a description, the complaint fails to state a cause of action." *O'Brien*, 2011 WL 221865, at *5 (quoting *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 65 (Ill. App. Ct. 2006)) (emphasis added).

One way plaintiffs can demonstrate a practice offends public policy is by showing "it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation." *3525 N. Reta, Inc. v. FDIC*, No. 10 C 3087, 2011 WL 62128 (N.D. Ill. Jan. 6, 2011) (citing *Elder v. Coronet Ins. Co.*, 558 N.E. 2d 1312, 1316 (1990)); *see also Ekl v. Knecht*, 585 N.E. 2d 156, 163 (Ill. App. Ct. 1991) (courts addressing unfairness claims under the ICFA must consider whether the challenged practice "offends public policy as established by statutes, the common law or otherwise, or in other words, whether it is at least within the penumbra of some established concept of unfairness"). In *Knecht*, for example, the Illinois Appellate Court found the defendant's practice of employing threats to collect fees

10

violated common-law doctrine against contracts under duress and therefore offensive to public policy. *Knecht*, 585 N.E. 2d at 163. Similarly, a plaintiff may predicate an ICFA unfairness claim on violations of a statute or regulation. *See, e.g., Gainer Bank, N.A. v. Jenkins*, 672 N.E. 2d 317, 319 (Ill. App. Ct. 1996) (holding that plaintiff may predicate an ICFA claim on defendant's violation of the Illinois Motor Vehicle Retail Installment Sales Act).

Here, Sharkey's ICFA unfairness claim is predicated on violations of the EFTA and Telemarketing Sales Rule, 16 C.F.R. Pt. 310 ("TSR"). The TSR requires "clear and conspicuous" disclosure of any "negative option feature." 16 C.F.R. § 310.3. A "negative option feature" is defined as follows: "in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(u). Sharkey's Complaint alleges NAC's "failure to make clear and conspicuous disclosure and its violation of the EFTA was unfair, in that it was contrary to public policy, as set forth in the EFTA and Telemarketing Sales Rule." (Compl. ¶ 43.) These allegations point to a specific practice – failing to make clear and conspicuous disclosures – and identify the statute and regulation that form the basis for Sharkey's contention that the alleged practice violates public policy. The Court finds these pleadings sufficient to state a cause of action for unfair practices under the ICFA. Also, because Sharkey ties his unfairness claim to both the EFTA and TSR, he may plausibly be entitled to relief under the ICFA even if he is ultimately unable to demonstrate a violation of the EFTA.

11

NAC suggests Sharkey cannot state a valid claim for unfair practices under the ICFA unless he is able to plead that the unfair policy presents a "total absence of the oppressiveness and lack of meaningful choice." (Dkt. No. 20, p. 10.) The law no longer supports that position. The proposition that a plaintiff must also prove some degree of oppressiveness or lack of meaningful choice was originally set forth by the Supreme Court of Illinois in *Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E. 2d 602 (1996). This approach was specifically rejected by the same court in *Robinson*, 775 N.E.2d at 961 ("Although the holding in *Saunders* seems to suggest that all three prongs of the *Sperry* test must be met, that is not an accurate statement of plaintiffs' burden."); *see also Gros v. Midland Credit Mgmt*, 525 F Supp. 2d 1019, 1025 (N.D. Ill. 2007) (Holderman, J.) (recognizing that the Supreme Court of Illinois's holding in *Robinson* abrogated its decision in *Saunders*). Therefore, Sharkey need not allege oppressiveness, lack of meaningful choice, or substantial injury to consumers in order to state a valid claim for unfair practices under the ICFA. Because Sharkey has properly stated a claim for unfair practices under the ICFA, NAC's Motion to Dismiss the unfair practices facet of Count II is denied.

### B. Deceptive Acts and Practices

Count II of Sharkey's Complaint fails to state a cause of action for deceptive acts or practices under the ICFA. In order to state a deceptive acts or practices claim under the ICFA, Sharkey must allege: (1) a deceptive act or practice by NAC; (2) NAC intended Sharkey rely on the deception; (3) the deception occurred in the course of conduct involving trade and commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Cozzi*

*Iron and Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 576 (7th Cir. 2001); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002).

Allegations of deceptive acts or practices are subject to Rule 9(b)'s heightened pleading requirement and therefore must be pled with particularity. *See O'Brien v. Landers*, 1:10-cv-02765, 2011 WL 221865, at *4 (N.D. Ill. Jan. 24, 2011) (finding "[the Rule 9(b)] particularity requirement applies to claims of deception made under the ICFA" because such "allegations of misrepresentation sound in fraud"); *Sindles v. Saxon Mortg. Svcs, Inc.*, No. 11 C 7224, 2012 WL 1899401, at *4 (N.D. Ill. May 22, 2012) ("The need for heightened pleading requirements applies only to the deceptive acts prong of the ICFA."). To satisfy Rule 9(b), "the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F. 2d 624, 627 (7th Cir. 1990); *see also Miller v. Showcase Homes, Inc.*, No. 98-C-2009, 1999 WL 199605, at *2 (N.D. Ill. Mar. 31, 1999) (noting that under Rule 9(b), a plaintiff must state "the identity of the person making the misrepresentation, the time, the place, and the content of the misrepresentation, and the method by which the misrepresentation was communicated").

Sharkey alleges NAC provided him with a document purporting to evidence an agreement of recurring shipments and debits. (Compl. ¶ 19.) Sharkey further states that on April 23, 2012, his account was charged $41.94 without notice or. (Compl. ¶¶ 14, 17.) Sharkey also identifies the specific acts and practices it believes to be deceptive – NAC's negative option feature and its failure to obtained signed authorization for recurring debits. These allegations, taken together, do more than merely identify NAC as a bad actor and make generalized

complaints about the vagueness its continuity program. Rather, Sharkey's Complaint cites to specific events, practices, omissions, transactions, as well as an agreement.

Nevertheless, Sharkey's Complaint fails to properly state a claim for deceptive practices because Sharkey has not sufficiently pled two requisite elements of an ICFA claim, namely intent and materiality. The ICFA prohibits the "misrepresentation or the concealment, suppression or omission of any *material* fact." 815 Ill. Comp. Stat. § 505/2 (emphasis added). "A material fact is one in which 'a buyer would have acted differently knowing the information, or ... concern[s] the type of information upon which a buyer would be expected to rely in making a decision whether to purchase.'" *Cozzi*, 250 F. 3d at 576 (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E. 2d 584, 593 (Ill. 2006)). "In other words, the fact 'must be essential to the transaction between the parties.'" *Id.* (quoting *L.R.J. Ryan v. Wersi Electronic GmbH and Company*, 59 F.3d 52, 54 (7th Cir. 1995)).

In this case, Sharkey has not alleged that NAC's failure to obtain authorization for additional shipments was essential to the transaction that gave rise to this case. Sharkey's Complaint is also bereft of any suggestion that he would have acted differently – perhaps by cancelling his participation in the Preferred Free Shipping program before receiving the April shipment – had NAC clearly and conspicuously disclosed its negative option feature or sought written authorization from Sharkey before enrolling him in the program. While Sharkey's return of the second shipment of pills immediately upon receipt suggests that he would not have been interested in the Preferred Free Shipping program had he been aware of it, Rule 9(b) requires that he "allege with sufficient particularity the facts that make [NAC's] omission or concealment

material." *White v. DaimlerChrysler Corp.*, 856 N.E. 2d 542, 550 (Ill. App. Ct. 2006); *compare Mack v. Plaza Dewit Ltd. Partnership*, 484 N.E. 2d 900, 906 (Ill. App. Ct. 1985) (dismissing condominium unit owner's complaint alleging miscomputation of common element ownership percentages of each condo unit on the basis that such misrepresentations would not "have been of such essential importance to a prospective unit owner that no purchase of the unit would have been made"), *with Cozzi*, 250 F.3d at 575 (materiality element met where plaintiff alleged he would not have entered into a copier lease agreement had he been aware that defendant did not intend to make certain changes to the terms of the agreement), *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E. 2d 66, 71–72 (Ill. App. Ct. 2001) (same where plaintiff specifically alleged he would not have purchased a vehicle from defendant had be been aware of vehicle's tendency to consume excessive amounts of oil), *and Perona v. Volkswagen of America, Inc.*, 684 N.E. 2d 859, 866 (Ill. App. Ct. 1997) (plaintiffs adequately pleaded materiality in consumer fraud action by alleging they would not have purchased vehicles had they been aware of a defect that caused unintended acceleration of the vehicle). Because Sharkey has failed to do so, his Complaint does not state a proper cause of action for deceptive acts and practices under the ICFA.

Sharkey also fails to allege in his Complaint that NAC intended for Sharkey to rely on its deception. Unlike common law fraud claims, which require the plaintiff to establish a defendant's intent to deceive, "[t]he intent required by the [ICFA] 'is merely the defendant's intent that the plaintiff in the action rely on the ... information the defendant gave to plaintiff.' " *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E. 2d 1, 12 (Ill. App. Ct. 2001) (quoting *Breckenridge v. Cambridge Homes, Inc.*, 616 N.E. 2d 615, 622–23 (Ill. App. Ct. 1993)); *see,*

15

*e.g., Lipinski*, 759 N.E. 2d at 72 (intent element met where plaintiff alleged that defendant intended for plaintiff to rely on omissions regarding the rate of a vehicle's oil consumption); Sharkey's Complaint is wanting of any reference to NAC's intent with respect to its alleged failure to make clear and conspicuous disclosures of its negative option feature.

Because Sharkey has not alleged with particularity facts supporting a finding of intent and materiality, Sharkey's Complaint fails to state a proper cause of action for deceptive acts and practices under the ICFA.

Accordingly, NAC's Motion to Dismiss Count II of Sharkey's Complaint, insofar as it alleges deceptive acts and practices, is granted. However, this grant is without prejudice and with leave to amend, as the Court finds that it may be possible for Sharkey to plead the intent and materiality elements with sufficient particularity so as to satisfy the heightened pleading requirements of Rule 9(b).

## CONCLUSION AND ORDER

For the reasons stated, Defendant's Motion to Dismiss Count I of Plaintiff's Complaint is granted with prejudice with respect to § 1693e of the Electronic Funds Transfer Act. Defendant's Motion to Dismiss Count II is denied with respect to Plaintiff's unfair practices claim, and granted without prejudice and with leave to amend with respect to Plaintiff's deceptive practices claim. Defendant's Motion to Strike Class Allegations is denied as moot with leave to refile following the filing of any amended complaint.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 28, 2012